1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    ELI LILLY AND COMPANY,                     Case No. 25-cv-03536-JST

8              Plaintiff,

9         v.                                    **ORDER GRANTING IN PART AND
                                                DENYING IN PART MOTION TO
10   ADONIS HEALTH, INC.,                       DISMISS**

                                                Re: ECF No. 40
11             Defendant.

12

13         Before the Court is the motion to dismiss filed by Defendant Adonis Health Inc. d/b/a

14   Henry Meds ("Henry"). ECF No. 40. The Court will grant the motion to dismiss in part and deny

15   it in part.

16   **I.    BACKGROUND**

17         Plaintiff Eli Lilly and Company ("Lilly") develops, manufactures, and sells medications,

18   including Mounjaro® and Zepbound®, two FDA-approved drugs for the treatment of diabetes,

19   weight management and sleep apnea. Complaint, ECF No. 1. ¶ 16; ¶¶ 27-28. Henry is a

20   telehealth platform that markets compounded versions of FDA-approved medications. *Id.* at ¶ 1;

21   ¶ 30. Compounded medications are drugs that are altered or modified "to create a medication

22   tailored to the needs of an individual patient." *Id.* at ¶ 30. Lilly alleges that Henry markets and

23   sells compounded versions of Lilly's FDA-approved tirzepatide drugs, Mounjaro® and

24   Zepbound®, and misrepresents that these drugs are as safe and effective as Lilly's products. *Id.* at

25   ¶ 3–6. Lilly alleges that Henry markets "'Compounded Tirzepatide," which it states has the same

26   "active ingredients" as Lilly's medications, and "Compounded Oral Tirzepatide[,] [which] is an

27   untested knockoff" of Lilly's own FDA-approved drugs. *Id.* at ¶¶ 4–5. Lilly also alleges that

28

Henry advertises its medications as being "patient-specific," but instead "sells the same mass-produced, compounded tirzepatide products for all patients." *Id.* at ¶ 7. Lilly contends that Henry's untrue statements are likely to mislead consumers and that its false advertising is interfering with Lilly's business and causing monetary damages. *Id.* at ¶¶ 80–82. Lilly also alleges that the lack of efficacy of Henry's untested compounded tirzepatide medications causes harm to Lilly's goodwill in the marketplace. *Id.* at ¶ 82.

Lilly filed this action on April 23, 2025 to address Defendant Henry's marketing and sales of "untested, unapproved tirzepatide drugs [while] risking patient safety and diverting" consumers from safe and effective medications. ECF No. 1 at ¶ 1. The complaint brings three causes of action: (1) Unfair Competition in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) False Advertising in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; and (3) False or Misleading Advertising and Promotion in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). *Id.*

Henry filed this motion to dismiss on July 2, 2025. ECF No. 40.[1] Lilly filed an

---

[1] Henry asks the Court to consider numerous pages from its corporate website, arguing that because "[t]he Complaint contains numerous references, screenshots, links, and citations to the Henry Meds website, . . . the Court may therefore consider the entire website as incorporated by reference into the Complaint." *Id.* at 10 n.1 (citing *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019)). The Court will deny the request because, as it has stated in numerous prior orders, it disagrees with the holding of cases like *Loomis*. The Court has explained as follows:

> Many of Defendants' requests also seek notice of material taken from websites, including their own website. These materials are not proper subjects of judicial notice. Dignity is correct that there are cases suggesting that courts may take judicial notice of "publicly available" websites. *See Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1190, 1204 (N.D. Cal. 2014); *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006), *order clarified*, No. C 05-4166 PJH, 2006 WL 734405 (N.D. Cal. Mar. 20, 2006); *Wible v. Aetna Life Ins. Co.*, 375 F.Supp.2d 956, 965-66 (C.D. Cal. 2005). But a close examination of those cases show little to no basis in sound authority for their conclusion. And having considered the issue more fully, this Court rejects the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document.

*Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *5 (N.D. Cal. July 14, 2025)

United States District Court
Northern District of California

1    opposition, ECF No. 45, and Henry filed a reply, ECF No. 50.  On August 16, 2025, Lilly filed a

2    sur-reply after obtaining leave of Court.  ECF No. 53-1; ECF No. 56.  The Court held a hearing on

3    September 18, 2025.

4    **II.    JURISDICTION**

5        This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

6    **III.    LEGAL STANDARD**

7        A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff

8    must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

9    550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must

10   contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its

11   face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the

12   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged."  *Id.*  While this standard is not a probability

14   requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's

15   liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*

16   (quotation marks and citation omitted).  In determining whether a plaintiff has met this plausibility

17   standard, the Court must "accept all factual allegations in the complaint as true and construe the

18   pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th

19   Cir. 2005).

20       Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility

21   standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule

22   9(b)."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  The heightened

23   pleading standard of Federal Rule of Civil Procedure 9(b) requires that "a party must state with

24   particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Allegations of

25   fraud must "be specific enough to give defendants notice of the particular misconduct so that they

26

27   ───────────────────

28   (declining to treat as incorporated by reference the terms of use posted on a party's website);
     *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1008 (N.D. Cal. 2024) (declining to take judicial
     notice of a party's website).

United States District Court
Northern District of California

can defend against the charge and not just deny that they have done anything wrong.  Averments

of fraud must be accompanied by the who, what, when, where, and how of the misconduct

charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks,

alteration, and citations omitted).

## IV.    DISCUSSION

Defendant Henry moves to dismiss the Complaint on the grounds that Eli Lilly: (1) lacks

standing under the Lanham Act; (2) lacks standing under the UCL; and (3) fails to state a claim for

false advertising or any unfair or fraudulent act.  ECF No. 40 ¶¶ 9–10.

### A.    Lanham Act Standing

As a threshold matter, Henry alleges that Lilly's false advertising claim under the Lanham

Act fails for the lack of statutory standing.  ECF No. 40 at 13.  Statutory standing is a more

demanding inquiry than Article III standing.  *ThermoLife Int'l LLC v. BPI Sports, LLC*, 2022 WL

612669 (9th Cir, 2022).  To establish Lanham Act standing, a plaintiff must allege that its injury is

(1) within the zone of interests protected by the Lanham Act and (2) was proximately caused by

defendant's violation of the Lanham Act.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

572 U.S. 118, 127–30 (2014).  For an injury to be "within the zone of interest in a § 1125(a) false-

advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales."

*Id.* at 131–32.  A plaintiff suing under the Lanham Act for false advertising "ordinarily must show

economic or reputational injury flowing directly from the deception wrought by the defendant's

advertising; and that that occurs when deception of consumers causes them to withhold trade from

the plaintiff."  *Id.* at 133.  When the parties are direct competitors, there is a presumption of harm.

*GovernmentGPT Inc. v. Axon Enter. Inc.*, 769 F. Supp. 3d 959, 986 (D. Ariz. 2025) (citing

*TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 825–27 (9th Cir. 2011)).  The requirement

that a plaintiff be within the "zone of interest" is not "especially demanding," and "forecloses suit

only when a plaintiff's interests are so marginally related to or inconsistent with the purposes

implicit in the statute that it cannot reasonably be assumed that Congress authorized . . . plaintiff

to sue."  *Lexmark*, 572 U.S. at 130 (citations and quotations omitted).  The proximate cause prong

requires that the plaintiff plead "economic or reputational injury flowing directly from the

deception wrought by the defendant's advertising" which "occurs when deception of consumers

4

causes them to withhold trade from the plaintiff." *Id.* at 133.

Henry first contends that Lilly is not a direct competitor, and therefore Court cannot rely on the presumption of injury under the Lanham Act that is available when parties are in direct competition. ECF No. 40 at 13–14. In the alternative, Henry alleges (1) that Lilly fails to plead that the allegedly false advertising caused any injury to Lilly, (2) that Lilly fails to plead any harm to its reputation, and (3) that Lilly cannot rely on harm to its customers from the false advertising to show standing. ECF No. 40 at 15–18.

Henry argues that it does not compete with Lilly because Henry is a "telehealth platform" that "provides medical practice management and services to independent licensed healthcare providers" who can "in turn assess, diagnose and treat patients, which may include prescribing medications like compounded tirzepatide," whereas Lilly is a company that manufactures and sells its own tirzepatide-containing drugs. ECF No. 40 at 13–14. Henry argues that since it is not a manufacturer of the tirzepatide compound it sells, it is not on the same level of the supply chain as Lilly, and therefore cannot be a competitor to Lilly. *Id.* This argument is not persuasive. First, Henry's "competition with" Lilly "is reflected in [Henry's] advertising itself, which draws direct comparisons between" Lilly's FDA-approved tirzepatide medications and Henry's compounded tirzepatide products. *Scilex Pharmaceutical Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at *5 (N.D. Cal. Aug. 16, 2021); ECF No. 1 ¶¶ 15–16. Henry has repeatedly marketed its offerings with the claim that the medications available on its platform contain the same active ingredient as Lilly's Mounjaro® and Zepbound®. *Id.* at ¶¶ 43, 48. Second, Lilly and Henry are direct competitors in the market for tirzepatide products because both Henry and Lilly market and sell tirzepatide-containing drugs, ECF No. 1 ¶ 28; ¶ 36, to the same potential customers, i.e., they "vie for the same dollars from the same consumer group." *TrafficSchool.com*, 653 F.3d at 827.

Henry's authorities on this point are not distinguishable. In *GovernmentGPT Inc.*, the plaintiff failed to allege direct competition because it had not yet even entered the same product market as the defendant. 769 F. Supp. 3d at 987. In *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, the parties were not selling similar products (a seller of canned cocktails not made with distilled spirits and a seller of vodka were not direct competitors). No. CV 20-9482-DMG (ASX),

5

2021 WL 4134841, at *7 (C.D. Cal. Aug. 6, 2021). And in *ThermoLife Int'l LLC v. BPI Sports, LLC*, which Henry cites in support of its claim that the parties are on different levels of the supply chain such that they are not direct competitors, one party sold chemical compounds for use in the manufacture of dietary supplements, and the other party produced its own dietary supplements. No. 21-15339, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022). Here, by contrast, both Henry and Lilly sell medications containing tirzepatide to similar groups of consumers for the purpose of weight management. ECF No. 1 ¶ 28; ¶¶ 36–43.

In its reply, Defendant argues that even if Lilly is a direct competitor, Lilly is not entitled to a presumption of harm because it does not allege that it has been harmed financially. ECF No. 40 at 15. The Court has already found that Lilly is a direct competitor and therefore entitled to a presumption of injury, but it also finds that Lilly has plausibly alleged financial harm. "A party may prove its injury (1) by using lost sales data, that is 'actual market experience and probable market behavior,' or (2) 'by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.'" *Allbirds, Inc. v. Giesswein Walkwaren AG*, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020) (quoting *TrafficSchool.com*, 653 F.3d at 825). Lilly has alleged financial harm through a chain of inferences by pleading that it competes with Henry for consumers seeking weight-loss medication containing tirzepatide and alleging that Henry's advertising entices customers away from Mounjaro® and Zepbound® towards Henry's compounded tirzepatide medications. ECF No. 1 ¶ 62. These allegations are sufficient at the motion to dismiss stage. *See Scilex Pharms.*, 2021 WL 11593043, at *3 (finding that plaintiff alleged financial harm through a chain of inferences by arguing that it competed with defendants and that their false advertising deceived consumers into buying defendants' product instead).

Henry argues in the alternative that, even if it was in direct competition with Lilly, Lilly has not alleged that it lost any sales specifically to Henry's false advertising, as the weight-loss market is large and contains numerous competing products. ECF No. 40 at 16. But that is not the market Lilly alleges. Rather, Lilly alleges that Henry competes in the market for *tirzepatide-containing* medications used for weight loss, a significantly narrower segment of the market. ECF. No. 1 ¶¶ 2-3. The Court is therefore persuaded that Lilly has established the "zone of

interest" prong of the Lanham Act standing inquiry.[2]

To establish the proximate cause prong, a plaintiff must also allege that it experienced "economic or reputation injury" proximately caused by the defendant, which occurs when "the deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. "The Ninth Circuit has stated that 'a false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim.'" *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *6 (C.D. Cal. Nov. 14, 2017) (quoting *TrafficSchool.com*, 653 F.3d at 825)). Lilly alleges that Henry's advertisements entice consumers looking for tirzepatide-based weight loss medications away from Mounjaro® and Zepbound® to Henry's tirzepatide products. ECF No. 1 ¶ 62. This type of allegation of "diversion of sales to a direct competitor [is the] paradigmatic direct injury from false advertising." *Lexmark*, 527 U.S. at 138. Therefore, the court finds that Lilly has sufficiently alleged that Henry's conduct is likely to cause economic injury.

Henry argues that the fact that both the FDA-approved and compounded versions of the medications require a prescription "breaks any chain of proximate cause" because "[i]t is ultimately the provider's decision to prescribe an appropriate medication for a particular patient." ECF No. 40 at 16. Courts have routinely found that Lanham Act claims can be maintained for prescription drugs, where the prescriber is the gatekeeper for the product, so this argument is unavailing. *See Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *6 (C.D. Cal. Nov. 14, 2017) (finding Lanham Act standing where both of the drugs in contention were available only by prescription); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL

---

[2] But see *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-CV-03570-AB-MAR, 2025 WL 2631620, at *6 (C.D. Cal. Aug. 29, 2025) (finding insufficient Lilly's allegations that "because of Defendant's advertisements, consumers 'may conclude that any tirzepatide is ineffective,' or 'may even draw unwarranted conclusions about the safety and effectiveness of [Plaintiff's] FDA-approved tirzepatide medicines' or the advertisements may 'steer patients away from [Plaintiff's] tested, proven medicines'"). Compare *id.* with ECF No. 1 ¶¶ 67 (alleging that by employing "deceptive and unfair business practices by marketing and selling its compounded oral and injectable tirzepatide to treat weight loss while creating the false impression that clinical trials confirm its effectiveness . . . . Henry lures consumers away from obtaining safe and effective treatment, such as Lilly's FDA-approved tirzepatide medicines"), 90 (alleging that "[a]s a direct and proximate result of Henry's false and deceptive campaign, Lilly has suffered and will continue to suffer significant monetary damages").

United States District Court
Northern District of California

1    11593043, at *6 (N.D. Cal. Aug. 16, 2021) (finding Lanham Act standing when one product was

2    available only with a prescription and the other one product was available over the counter).

3          Therefore, the Court concludes that Plaintiff has sufficiently alleged both the "zone of

4    interest" and "proximate causation" necessary to establish standing under the Lanham Act.

5          **B.     Standing Under UCL and FAL**

6          Henry argues that Lilly lacks the basis to establish standing for its UCL and FAL claims

7    because UCL standing is limited exclusively to persons who have "suffered injury in fact and

8    [have] lost money or property as a result of the unfair competition."  ECF No. 40 at 18 (quoting

9    Cal. Bus. R. Prof. Code §17204.  Henry also argues that Lilly has not established an injury to a

10   legally protected interest other than a speculative injury to its reputation.  *Id.* at 19.  "The standing

11   requirements under California's FAL and UCL and the federal Lanham Act are generally the

12   same."  *Tortilla Factory, LLC v. Better Booch, LLC*, 2018 WL 4378700, at *3 (C.D. Cal. Sept. 13,

13   2018) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017)).  For

14   UCL and FAL claims, Plaintiffs must "(1) establish a loss or deprivation of money or property

15   sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury

16   was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the

17   gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011) (emphasis

18   in original).

19         Lilly alleges that "[a]s a direct and proximate result of Henry's deceptive and unfair

20   business practices, Henry has wrongly obtained an illegal business advantage" and that "Lilly has

21   suffered and will continue to suffer monetary damages that can be measured and quantified as well

22   as discernible competitive injury by the loss of goodwill."  ECF No. 1 ¶ 70  Having found that

23   Lilly has standing for its Lanham Act claim and seeing that Lilly has made "factual allegations

24   rather than legal conclusions" about "lost sales," Lilly's alleged harm is sufficient for standing

25   purposes under the FAL and UCL statutes.  *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL

26   12435672, at *4 (C.D. Cal. Aug. 19, 2019) (citing *Monster Energy Company v. Vital*

27   *Pharmaceuticals, Inc.*, 2019 WL 2619666, at *9 (C.D. Cal. May 20, 2019)).  The Court therefore

28

United States District Court
Northern District of California

1    finds that Lilly has alleged monetary harm sufficient to demonstrate standing for its UCL claim.[3]

2        **C.    Motion to Dismiss for Failure to State a Claim**

3        Henry moves to dismiss Lilly's complaint on the grounds that it fails to state a claim for

4    relief.  False advertising under the Lanham Act has five elements:

> (1) a false statement of fact by the defendant in a commercial
> advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a
> substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the
> purchasing decision;
> (4) the defendant caused its false statement to enter interstate
> commerce;
> (5) the plaintiff has been or is likely to be injured as a result of the
> false statement, either by direct diversion of sales from itself to
> defendant or by a lessening of the goodwill associated with its
> products.

12   *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).  Henry argues that Lilly

13   fails to allege falsity or deception.

14       Alleging falsity requires the plaintiff to show that "the statement was literally false, either

15   on its face or by necessary implication, or that the statement was literally true but likely to mislead

16   or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.

17   1997).  When evaluating whether an advertising claim is literally false, the claim must always be

18   analyzed in its full context.  *Id.* (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d

19   Cir.1993)).

20       "In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL

21   and the UCL] are substantially congruent to claims made under the Lanham Act."  *Scilex Pharms.,*

22   *Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *9 (N.D. Cal. Feb. 24, 2022); *see also*

23   *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (analyzing claims under the Lanham

24   Act and the UCL similarly).  The Court therefore consolidates its analyses of Lilly's false

25   advertising claims under federal and state law, except to address Henry's arguments that are

26   specific to the UCL and FAL.  ECF No. 40 at 25–30.

---

[3] Having found standing, the Court does not assess whether reputational harm alone would suffice
for standing under UCL and FAL.

United States District Court
Northern District of California

Lilly alleges two broad types of false statements in its complaint: (1) that Henry falsely claims that its medications are "safe and effective" even though "no clinical trials demonstrate that compounded tirzepatide—in any form—is safe, effective, or even approved for human use," ECF No. 1 ¶ 4; and (2) that Henry "deceives consumers by touting its products as 'patient-specific medication[s]'" when "[i]n reality, Henry does not sell 'patient-specific' tirzepatide at all, but rather sells the same mass-produced, compounded tirzepatide products for all patients," *id.* ¶ 7.

Lilly argues preliminarily that the question of whether a particular statement is false or misleading is a question of fact inappropriate for adjudication on a motion to dismiss. ECF No. 45 at 20 (citing *Instant Checkmate, Inc v. Background Alert, Inc.,* 2014 WL 12526275, at *5 (S.D. Cal. Dec. 5, 2014)). This Court declines to follow *Instant Checkmate*. As the Court has previously noted, that court overreads the Ninth Circuit's holding in *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053–54 (9th Cir. 2008). The *Newcal* court held only that it could not decide "a motion to dismiss a false or misleading statement claim where determining the false or misleading nature of the statement required considering additional facts beyond those in the complaint." *Scilex Pharma. Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *6 n.5 (N.D. Cal Feb. 24, 2022) (citing *Newcal*, 513 F.3d at 1053–54). It did not decide, as Lilly would have the Court believe, that "no motion to dismiss a deceptive advertising claim could ever be granted." *Id.* The Court therefore proceeds to assess each set of allegedly false claims to determine whether Lilly has stated a claim.

### 1.    Statements that Henry's Medications are "Safe and Effective"

Lilly alleges that Henry falsely advertises that its medications are "safe and effective" even though its "Oral Tirzepatide is an untested knockoff that exposes patients to safety risks without any clinical data" showing that it works. ECF No. 1 ¶¶ 4–5. Lilly further alleges that Henry makes the following false or misleading statements about the products' safety and efficacy even though there are no scientific studies supporting Henry's claims:

- "[I]t is '[f]alse' to state that 'Compounded GLP-1s are not science-backed." *Id.* at ¶ 45.
- "Daily Oral Tirzepatide tablets work by increasing insulin production and lowering glucagon secretion as well as targeting areas in the brain that regulate appetite and food

intake." *Id.* at ¶ 37 (citation modified).

- "Tirzepatide is the active pharmaceutical ingredient used in Mounjaro® and Zepbound® that has helped thousands of people lose and maintain weight loss in combination with diet and exercise." *Id.* at ¶ 43.

- "[N]o injections or insurance [are] required" and that the product contains "the same active ingredient as Mounjaro®." *Id.* at ¶ 49.

- "Actual weight loss is dependent on a number of factors but many Henry Meds patients lose around 5% of their initial body weight. Over 12 weeks, it can be as high as 10%." *Id.* at ¶ 46.

Henry responds that none of these statements is false or misleading. ECF No. 40 at 21. In the alternative, Henry argues that, at most, Lilly pleads a lack of substantiation, which is insufficient to sustain a false advertising claim. *Id.* at 22.

Under the heightened pleading standards for fraud under Rule 9(b), "a plaintiff may not sustain false advertising claims based solely on 'lack of substantiation' grounds." *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672, at *6 (C.D. Cal. Aug. 19, 2019. "Courts have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012). Thus, "a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013).

The Court finds that Lilly's allegations are in fact lack of substantiation claims. Lilly argues that the claim that compounded GLP–1s (and therefore, Henry's oral tirzepatide) are "safe and effective" is false because this implies that there are scientific studies establishing this when in reality there are none. ECF No. 45 at 18–20. But "a plaintiff must particularly allege falsity of the challenged statements, and not just that a defendant's statement lacked support." *Strategic Partners*, 2019 WL 12435672, at *6.

Lilly's cases do not say otherwise. In *McCracken v. KSF Acquisition Corp*, the court rejected the defendant's "lack of substantiation" argument because defendant affirmatively

claimed on its labels that its products were "clinically proven" to help consumers "lose weight." 2023 WL 5667869 at *1, 4 (C.D. Cal. Apr. 4, 2023). Henry has not claimed that its products are clinically proven to do anything. Similarly, in *Guardant Health, Inc. v. Natera, Inc.*, plaintiff claimed that defendant made false claims about a specific study used to evaluate its products—not that defendant had no such study. 580 F. Supp. 3d 691, 704 (N.D. Cal. 2022). All Lilly contends is that Henry's advertising "falsely impl[ies] that defendant's product claims were based on credible scientific proof," but "[t]hese allegations are [just] conclusory and do nothing to support or prove the falsehood of the claims." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

The Court finds that Lilly's allegations regarding Henry's statements about the safety and efficacy of its products fail to state a claim for relief. The Court therefore dismisses Lilly's Lanham Act, UCL and FAL claims as they pertain to these statements.

### 2.    Statements that Henry Offers "Personalization"

Lilly also alleges that Henry falsely advertises "individualized treatments," "tailored Treatment," and "patient-specific" medications that "meet[] each patient's unique needs" while in fact selling "mass-manufactured, one-size-fits-all unapproved compounded drugs." ECF No. 1 ¶¶ 53–60. Lilly alleges that these false statements lure patients away from FDA-approved tirzepatide products because patients could believe that they will receive "patient-specific" weight-loss medications from Henry. *Id.* at 53. Henry responds that it complies with the Food, Drug and Cosmetic Act's ("FDCA") 503A and 503B requirements that apply to compounded pharmacies which entitle them to manufacture for an "identified individual patient . . . a compounded product [that] is necessary for the identified patient" and the statute does not require each patient to receive treatment that is personalized to them. ECF No. 40 at 24. Henry also argues that because it adheres to the compounding requirements establish by the FDCA, its claims of individualized treatments, tailored treatments and patient-specific drugs are all preempted. *Id.* at 22 n.5 (citing *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.,* 48 F.4th 1040, 1044 (9th Cir. 2022); 24.

The Court first finds that Lilly adequately alleges falsity. Lilly asserts that notwithstanding

United States District Court
Northern District of California

Henry's claims about "individualized treatments," "Tailored Treatments," and "patient-specific" medications that "meet[] each patient's unique needs," ECF No. 1 ¶ 53–60, Henry in fact offers a "standard treatment plan [where] each patient will receive the same pre-made dosage of tirzepatide, over the same amount of time, regardless of any patient's individualized circumstances." Henry cites *Allergan USA, Inc. v. Imprimis Pharmaceuticals* to argue that "[p]ersonalization does not mean that every compounded medication must be different for every patient, it need only be tailored to the specific goals of the patient." ECF No. 40 at 24 (citing *Allergan,* No. 8:17-cv-01551-DOC-JDE, 2019 WL 4545960, *11 (C.D. Cal. Mar. 27, 2019)). But that does not accurately reflect the court's holding. The *Allergan* court found that plaintiff had provided sufficient evidence to defeat summary judgment that defendant was violating "the requirement that 503A facilities customize drugs for identified individual patients." *Id.* The *Allergan* court never determined whether a personalization claim was literally false in the context of a false advertising claim. *Id* at 11.

The Court next finds that Henry's alleged compliance with the FDCA is immaterial. Lilly alleges in its complaint that the advertisements by Henry about individualized treatment plans are literally false because patients receive the same standard treatment plan regardless of their needs. ECF No. 1 ¶ 53; ¶ 59. FDCA compliance is irrelevant to whether the advertising of "patient-specific" "tailored" or "individualized treatment" is false. Henry does nothing to rebut the literal falsity of the statements—which as understood by "any linguistically competent person" would lead to the belief that Henry specifically creates individualized medication plans for each patient. *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc*., 619 F. Supp 3d 983, 996 (C.D. Cal. 2022).[4]

Next, the Court finds that Lilly's personalization claims are not preempted. In *Nexus*, the Ninth Circuit held that the FDCA preempts state law claims that seek to privately enforce the FDCA. *See Nexus*, 48 F.4th at 1050. "*Nexus* stands for the principle that state law false

---

[4] Henry cites *Willow Health*, No. 2:25-CV-03570-AB-MAR, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025), which found that similar personalization claims were not false or misleading because defendant Willow Health complied with FDCA requirements. *Id.* at *10. The court's holding was based on an interpretation of *Allergan USA, Inc. v. Imprimis Pharms., Inc.* that this Court rejects *infra*.

advertising claims should be precluded when they would require litigation of the alleged

underlying FDCA violation in a circumstance where the FDA has not itself concluded that there

was a violation." *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2023 WL

2919318, at *3 (S.D. Cal. Apr. 12, 2023) (citation and quotation omitted). In other words, FDCA

preemption analysis depends on whether a plaintiff is "attempting to use causes of action available

under state law to claim damages for violations of duties owed under the FDCA." *Davidson v.

Sprout Foods, Inc.*, 106 F.4th 842, 848 (9th Cir. 2024). Thus, claims that drug compounding

facilities violate state statutes that prohibit sales of drugs not approved by the FDA, or that

defendants' sale of compounded drugs without premarket approval violates state unfair

competition laws, are barred. *Eli Lilly & Co. v. Alderwood Surgical Ctr. LLC*, 2025 WL 745670,

at *5 (W.D. Wash. Mar. 7, 2025) (first citing *Nexus*, 48 F.4th at 1044; and then citing *Hope

Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*, 2023 WL 4758454 (9th Cir.

July 26, 2023)). Conversely, where a plaintiff's state law claims "do not necessarily rely on any

interpretation of the FDCA" and "in no ways rise[] or fall[] on the actions of the FDA or any

interpretation of the FDCA," the claims are not preempted. *Slattery v. Athena Cosms., Inc.*, 740 F.

Supp. 3d 1009, 1017 (C.D. Cal. 2024). Thus, "claims [may] go forward [where they do] not rely

on noncompliance with FDA requirements, . . . but rather on traditional tort law duties." *Nexus*,

48 F.4th at 1046. Here, Lilly's claims of falsity do not depend on violation of the FDCA.

Henry cites several cases where courts found that state FAL, UCL or consumer protection

claims were preempted by the FDCA, but those cases are inapposite because they involve

allegations either that the defendant misrepresented the existence of FDA approval or that the

defendant competed unfairly based on an alleged failure to follow rules set by the FDA. *See*

ECF No. 50 at 17 (collecting cases). But FDCA preemption does not reach actions where

plaintiffs make allegations that "would 'give rise to liability under state law even if the [FDCA]

did not exist.'" *Novo Nordisk Inc. v. Live Well Drugstore, LLC*, 2025 WL 2104223, at *5 (M.D.

Fla. Jan. 30, 2025) (quoting *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, 2023 WL 7385819, at

*3 (M.D. Fla. Nov. 8, 2023)). Lilly's allegations are not focused on the FDA or FDCA adherence,

but rather that Henry is falsely advertising "tailor-made" or "individualized treatments" when the

14

1   treatment is in fact standardized.  ECF No. 1 at ¶ 58.  Taking Lilly's allegations as true, these

2   claims would allege false or misleading statements regardless of compliance with the FDCA.

3          Further, even if the FDCA preempted Lilly's state UCL and FAL claims as to

4   personalization statements—which is not the holding of this order—Lilly's Lanham Act claims

5   would still survive.  "In 2014, the Supreme Court in *POM Wonderful* held that 'the FDCA and the

6   Lanham Act complement each other' and that 'Congress did not intend the FDCA to preclude

7   Lanham Act suits[.]'" *Alderwood Surgical Ctr. LLC*, 2025 WL 745670, at *7 (quoting *POM*

8   *Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106, 121 (2014)).

9          Finally, since Lilly has adequately alleged that the claims of personalization are literally

10  false, the Court presumes actual deception.  *Factory Direct Wholesale, LLC v. iTouchless*

11  *Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) (finding that when

12  plaintiffs plead that a statement is actually false, actual deception can be presumed).  Therefore, at

13  this stage, Lilly need not establish evidence of actual consumer confusion.  ECF No. 45 at 21.  The

14  Court therefore denies Henry's motion to dismiss Lilly's Lanham Act claims as to Henry's

15  "personalization" statements.

16                      **3.      Unfair Competition Claims**

17         The parties both acknowledge that "[i]n the Ninth Circuit, claims of unfair competition and

18  false advertising under [the FAL and UCL] are substantially congruent to claims made under the

19  Lanham Act."  *Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F.Supp.2d 1168, 1182

20  (N.D.Cal.2007) (internal quotations omitted); *see* ECF No. 40 at 20; ECF No. 45 at 22.  As

21  regards the UCL, Henry makes the additional arguments that (1) Lilly fails to allege a violation of

22  the UCL under any of the unlawful, unfair, or fraudulent prongs of that statute, *see* Cal. Bus. &

23  Prof. Code § 17200 (defining "unfair competition" to include "any unlawful, unfair or fraudulent

24  business act or practice and [any] unfair, deceptive, untrue or misleading advertising"); and (2)

25  Lilly fails to plead that there was any "actual reliance on the allegedly deceptive or misleading

26  statements" which "[are] judged by the effect [they] would have on a reasonable consumer."  ECF

27  No. 40 at 25–28.

28         Lilly has adequately pleaded a UCL claim under at least the unlawful or fraudulent prongs

United States District Court
Northern District of California

15

United States District Court
Northern District of California

of the UCL. First, Lilly has alleged a false advertising claim under the Lanham Act, which is enough to support its UCL claim. The UCL "prohibit[s] 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) (quoting *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985)). As discussed above, Lilly sufficiently alleges that several statements in Henry's advertising regarding personalization are literally false. Second, at this stage, Lilly need not show consumer reliance. Consumer confusion is adequately pleaded when plaintiff alleges that the conduct is "likely to deceive reason consumers." *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 971 (9th Cir. 2021); *see also Brady*, 26 Cal. App. 5th at 1173 (2018) (noting that "to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived") (citation and quotation omitted). Moreover, "[c]ourts recognize the reasonable consumer standard 'raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.'" *Barry N. Kay v. Copper Cane, LLC*, 2021 WL 2953241, *5 (N.D. Cal. July 14, 2021) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).[5]

## CONCLUSION

For the foregoing reasons, Henry's motion to dismiss is granted as it pertains to statements that its products are "safe and effective" and denied as it pertains to statements that its products are "personalized."

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] Henry also argues briefly that Lilly is not entitled to restitution or damages because it "fails to assert any cognizable harm that it has suffered because of Henry Meds' purportedly deceptive advertising." ECF No. 40 at 27-28. This section of Henry's motion merely incorporates arguments contained elsewhere in its brief, which the Court has already addressed above.

Lilly may file an amended complaint within 21 days solely to cure the deficiencies identified in this order.  If Lilly does not file an amended complaint, the case will proceed solely as to Henry's personalization claims.

**IT IS SO ORDERED.**

Dated:  September 24, 2025



JON S. TIGAR
United States District Judge