United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ELI LILLY AND COMPANY,
Plaintiff,
v.
ADONIS HEALTH, INC.,
Defendant.

Case No. 25-cv-03536-JST (LB)

**DISCOVERY ORDER**

Re: ECF No. 111

## INTRODUCTION

Eli Lilly and Co. is suing Henry Meds (also known as Adonis Health, Inc.) for false advertising and unfair competition. Lilly alleges that Henry advertises "personalized" compounded versions of Lilly's tirzepatide drugs (Mounjaro and Zepbound) while selling the same mass-compounded product to every patient.[1] The parties have a discovery dispute about Henry's collection of electronically stored information (ESI). Lilly contends that Henry never collected from five cloud-based platforms (Heap, Lucid, Figma, Asana, and Codeless) even though Henry's production contains hundreds of automated email notifications showing that Henry employees used those platforms to create and discuss documents about tirzepatide and

[1] Compl. – ECF No. 1; Order – ECF No. 62 at 12–16 (personalization claims survive; safety-and-efficacy claims dismissed). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

Henry's post-shortage strategy. Lilly asks the court to order Henry to (1) collect, review, and produce responsive documents from the five platforms and (2) identify any other ESI sources that it has not searched.[2] Henry responds that (1) Lilly has identified no substantive deficiency in its production, (2) Lilly moved to compel the additional collections only after Henry substantially completed its production (following extensive pre-production meet-and-confers), (3) Lilly points only to automatic notification emails and emails with hyperlinks and only speculates that more documents must exist somewhere, (4) Lilly never established that the discovery is relevant and proportional, (5) granting Lilly's request will likely require extending the discovery deadline, and (6) Lilly has not followed the ESI order's procedures for producing hyperlinked files and collaboration platforms, which requires (a) Lilly to first make "a reasonable and particularized request" before Henry will "produce or identify hyperlinked files to the extent it can locate them using reasonable efforts" and (b) the parties to "meet and confer as necessary to identify proportional mechanisms and parameters for production."[3]

The court grants the first request: Henry must collect from the five platforms, apply the parties' agreed search methodology, and produce responsive, nonprivileged documents. The court denies the second request: the ESI's meet-and-confer process has been sufficient to address like issues.

## STATEMENT

Henry is a telehealth platform that markets compounded tirzepatide.[4] The trial court dismissed Lilly's claims that Henry falsely advertises its products as safe and effective but held that Lilly plausibly alleged that Henry's "individualized," "tailored," and "patient-specific" advertising is literally false because every patient receives the same pre-made dosage over the same period.[5] A central factual issue thus is whether Henry continued to sell mass-compounded tirzepatide, rather

[2] Disc. Letter Br. – ECF No. 111 at 2–4.

[3] *Id.* at 4; ESI Order – ECF No. 72 at 4 (§ 5, Hyperlinked Files), 6 (§ 7, Production Formats). The court can decide the dispute without oral argument. Civil L.R. 7-1(b).

[4] Order – ECF No. 62 at 1.

[5] *Id.* at 12–16.

United States District Court
Northern District of California

than individualized product, after the FDA ended the tirzepatide shortage.[6]

The court entered the parties' stipulated ESI Order.[7] The order (1) allows custodians and sources to be added "after meeting and conferring if any party reasonably believes additional custodians are likely to have unique, relevant information" (§ 4(b)), (2) requires the parties to "meet and confer about methods to search ESI," recognizes that "a responding party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own electronically stored information," and directs the parties to confer about "any questions or disputes about the use of any particular culling methodologies" (§ 5), (3) provides that a hyperlinked file "is not part of the same document family as the document containing the hyperlink," that "a producing party need not produce the hyperlinked file as such," and that "upon a reasonable and particularized request," the producing party will "produce or identify hyperlinked files to the extent it can locate them using reasonable efforts" (§ 5), and (4) provides that for collaboration platforms, the parties will "meet and confer as necessary to identify proportional mechanisms and parameters for production" (§ 7).[8]

Henry culled its custodial collection with search terms (which it disclosed to Lilly) and technology-assisted review with responsiveness ranking. The parties conferred about that methodology beginning in February 2026, and after the court ordered production from the Colchis custodians, Lilly asked Henry to apply the same methodology and search terms to them.[9] Henry's production consists primarily of custodial email, Google Drive, and limited shared-network-drive documents.[10]

Henry's production includes hundreds of automated email notifications alerting custodians to

---

[6] Disc. Letter Br. – ECF No. 111 at 2.

[7] ESI Order – ECF No. 72.

[8] Disc. Letter Br. – ECF No. 111 at 4–6 (quoting ESI Order – ECF No. 72 §§ 4(b), 5, 7); ESI Order – ECF No. 72 at 4 (§ 5), 6 (§ 7).

[9] Disc. Letter Br. – ECF No. 111 at 5; Order – ECF No. 92 at 5.

[10] Disc. Letter Br. – ECF No. 111 at 3. Henry does not dispute the description. Lilly's counsel also declares that on September 2, 2026, Henry said that it had collected and produced from Google Documents and Jira and had collected from Zendesk, Chargeable, Framer, and Iterable (without confirming production from those four). Salomon Decl. – ECF No. 111-1 at 3 (¶ 6).

activity on cloud-based platforms.[11] Lilly's examples include the following. An Asana notification to a Henry custodian lists "Pharmacy Operations" tasks titled "Tirzepatide Post Cut Off Contingency," "Semaglutide Post Cut Off Contingency," and "Semaglutide Bulk Offer," and another reports completion of a "Tirzepatide launch plan" task.[12] A Lucid notification shows that Dr. Steven Peacock (Henry's Chief Medical Officer) invited Dr. Elizabeth Lowden to edit a "Post Shortage Intake Flow" board, and a Dr. Peacock weekly progress report, under the heading "Off shortage planning," links to an "Unfinished" brainstorm in Lucid of changes to the patient-intake flow "to reflect the 'provider is making the decision to use compounded meds after review of individualized patient history.'"[13] Figma comment notifications show a Henry employee asking, about marketing copy, "Is there a way to position this as 'Personalized'?" and, about a paid-social advertisement, "Can we directly test with and without the competitor name?"[14] Heap alerts report changes in the conversion rate of a "Tirzepatide - Oral Alert Funnel" chart.[15] And task notifications under a "CODELESS > Client Content Dashboards > Adonis Health Content Dashboard" path concern drafts titled "compounded tirzepatide" and "tirzepatide side effects."[16] Lilly says that the underlying documents are not in Henry's production, that these examples are not exhaustive, and that the production contains hundreds of similar notifications.[17]

At a September 2, 2026 meet-and-confer, Lilly raised the cloud-platform issue (screen-sharing examples) and asked Henry to identify the ESI sources it had collected from. Henry identified its sources and confirmed that it had not collected from Heap, Lucid, Figma, Asana, or Codeless.[18]

---

[11] Salomon Decl. – ECF No. 111-1 at 2 (¶ 2).

[12] Asana Emails, Ex. A to Salomon Decl. – ECF No. 111-2 at 1–2.

[13] Lucid Emails, Ex. A to Salomon Decl. – ECF No. 111-2 at 3–4; Order – ECF No. 92 at 5 (Dr. Peacock's role).

[14] Figma Emails, Ex. A to Salomon Decl. – ECF No. 111-2 at 5–6.

[15] Heap Emails, Ex. A to Salomon Decl. – ECF No. 111-2 at 7–8.

[16] Codeless Emails, Ex. A to Salomon Decl. – ECF No. 111-2 at 9–10. These notifications come from ClickUp (notifications@tasks.clickup.com) under a "CODELESS" workspace path. Both parties call the source "Codeless," and the court does the same.

[17] Salomon Decl. – ECF No. 111-1 at 2 (¶¶ 2–4).

[18] *Id.* at 2–3 (¶¶ 5–7).

Henry says that at that meeting it invited Lilly to submit a list of documents containing hyperlinks under § 5 and that Lilly has not done so.[19] When Lilly earlier raised hyperlinks to Notion, Henry collected and produced from Notion rather than insisting on the § 5 procedure, and when Lilly identified a gap in Henry's Google Drive collection (custodians' individual folders), Henry supplemented its production.[20] Henry declared its production substantially complete in mid-September 2026.[21] Fact discovery closes on December 4, 2026.[22] Henry says that collecting from the five platforms (all third-party applications) will require a vendor, culling, and review and will almost certainly require extending that deadline.[23]

**ANALYSIS**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up and quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be

---

[19] Disc. Letter Br. – ECF No. 111 at 5.

[20] *Id.* at 4 n.1, 6.

[21] Salomon Decl. – ECF No. 111-1 at 3 (¶ 8); Disc. Letter Br. – ECF No. 111 at 4.

[22] Am. Scheduling Order – ECF No. 107 at 1.

[23] Disc. Letter Br. – ECF No. 111 at 6 n.4.

United States District Court
Northern District of California

allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b)(2)(C), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." A party responding to a document request must produce responsive documents in its "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), and its response must rest on "a reasonable inquiry," Fed. R. Civ. P. 26(g)(1).

**1. Collection from the Five Platforms**

**1.1 The ESI Order Does Not Excuse Collection**

Henry's lead argument is that the ESI Order's hyperlink provision (§ 5) and collaboration-platform provision (§ 7) supply the exclusive procedure here, so that Lilly's remedy is a "reasonable and particularized" list of hyperlinks.[24] That misreads the dispute and the order.

The hyperlink provision answers a narrow question: whether a file linked in a produced document is part of that document's family and must be produced with it. It says no, subject to a particularized-request mechanism. It does not say that a repository is exempt from collection because produced emails happen to link to it. Lilly is not asking for linked files as family members. It is asking Henry to search five repositories that Henry's production shows its employees used to create and discuss documents on the central issue in the case, and most of Lilly's examples are not hyperlinked documents at all and instead are automated notifications of activity on the platforms.[25] The obligation to search a source reasonably likely to contain responsive documents comes from Rules 26(g) and 34, and the parties did not stipulate it away. Section 7 confirms the point: it contemplates production from collaboration platforms and directs the parties to confer about "proportional mechanisms and parameters" for it. That is a provision about how, not whether.

The deference that § 5 gives a responding party concerns "procedures, methodologies, and

[24] *Id.* at 5.

[25] *Id.* at 3; Ex. A to Salomon Decl. – ECF No. 111-2 at 1–10.

technologies" (search terms, technology-assisted review, culling), and as discussed below, it requires Henry to apply the methodology the parties already negotiated. It does not insulate a decision to leave an entire category of sources uncollected. Henry's cases are consistent with that reading. *Schulte* declined to impose search and disclosure obligations beyond those in the parties' protocol, and *Yotta* declined to order production of hyperlinked documents where the moving party merely gestured at them and called them important. Neither holds that a protocol's hyperlink provision excuses a party from collecting a source of its own business records that it knows contains responsive material. *Schulte v. LinkedIn Corp.*, No. 22-cv-00237-HSG (LB), 2026 WL 1905851, at *2–3 (N.D. Cal. July 1, 2026); *Yotta Techs. Inc. v. Evolve Bank & Tr.*, No. 24-cv-06456-TLT, 2026 WL 172502, at *4 (N.D. Cal. Jan. 22, 2026). Henry's conduct undercuts its reading too: when Lilly flagged Notion, Henry collected and produced from it rather than demanding hyperlink requests.[26]

Nor does § 4(b) or timing bar the request. Section 4(b) allows adding sources after conferring where a party reasonably believes a source is likely to have unique, relevant information. The parties conferred on September 2, and Lilly's belief is reasonable for the reasons in the next section. Lilly did not know which sources Henry had collected from until that conference and did not learn that Henry would not collect from the five platforms until Henry declared substantial completion two weeks later.[27] Henry does not say that it disclosed its sources earlier; it says only that the ESI Order did not require it to.[28] Lilly raised the issue at the first reasonable opportunity.

**1.2 Relevance, Proportionality, and Burden**

Lilly has carried its initial burden. "A requesting party's mere suspicion that additional documents exist is an insufficient basis to grant a motion to compel." *Mizrahi v. Google LLC*, 732 F. Supp. 3d 1068, 1070 (N.D. Cal. 2024). But Lilly's showing is not suspicion. Henry produced the notifications, and they name tasks, boards, drafts, and charts on the central issue: a "Tirzepatide Post Cut Off Contingency," a "Post Shortage Intake Flow," an intake-flow

---

[26] Disc. Letter Br. – ECF No. 111 at 6.

[27] Salomon Decl. – ECF No. 111-1 at 3 (¶¶ 6–8).

[28] Disc. Letter Br. – ECF No. 111 at 5 n.3.

brainstorm about reflecting "individualized patient history," a discussion of whether to "position this as 'Personalized,'" and conversion metrics for a tirzepatide funnel.[29] Henry concedes that it did not collect from the platforms where those materials reside. That is specific, document-level evidence of responsive, uncollected material. Henry's rejoinder that the notifications show only that "an application existed and sent an alert" does not engage with what the notifications say. And Henry's suggestion that the underlying material may duplicate its email and Google Drive productions is unsupported: Henry controls the platforms and does not say that it checked. If the platforms hold only duplicates, the agreed methodology and deduplication will show that.

Proportionality favors the discovery. The personalization claims are the case, and the platforms appear to be where Henry's employees did the work on them. Only Henry has access. Henry has not quantified any burden (no data volumes, cost estimates, or vendor timelines). The party resisting discovery must support its objections with competent evidence. *Lofton*, 308 F.R.D. at 281. The schedule is a reason to proceed promptly, not a reason to forgo discovery of core documents. Any request to modify the scheduling order must be made to the trial judge.[30]

**1.3 Scope of the Order**

The scope of this order is tailored to the ESI Order (rather than displacing it). Henry must (1) collect from Heap, Lucid, Figma, Asana, and Codeless, (2) apply the search terms and technology-assisted-review methodology that the parties negotiated, adapted as needed to each platform's data format, and (3) review and produce responsive, nonprivileged documents. Within seven days of this order, the parties must meet and confer under § 7 about mechanisms and parameters for each platform. Heap, for example, is an analytics tool whose responsive content may be reports, dashboards, and alert configurations rather than files,[31] and the parties may agree on an export of relevant charts and reports rather than a wholesale collection. Henry must substantially complete the production by November 20, 2026, and, if that is not realistic, work out a different date with Lilly.

---

[29] Ex. A to Salomon Decl. – ECF No. 111-2 at 1–8.

[30] Lilly says that it raised the scheduling issue at the September case-management conference. Disc. Letter Br. – ECF No. 111 at 3 (citing Updated Joint CMC Statement – ECF No. 104 at 7.

[31] *See id.* at 2–3.

United States District Court
Northern District of California

**2. Identification of Other Unsearched Sources**

Lilly also asks the court to order Henry to identify "what other sources of ESI may exist at Henry but were not searched for responsive information." Henry responds that § 5 defers to the responding party, that § 4(b) governs adding sources, and that an inventory will fuel endless serial demands.

The court denies the second request. The ESI Order gives the responding party the lead in deciding how to search its own ESI and provides a meet-and-confer mechanism for adding sources (§§ 4(b), 5). Rule 26(g) requires a reasonable inquiry; it does not require a producing party to inventory its information systems for the requesting party to audit. Lilly's showing of past gaps (the Google Drive individual folders and Notion) shows that the meet-and-confer process works: Henry fixed each gap when Lilly identified it. With the five platforms addressed above, Lilly identifies no other specific source, and an open-ended identification order would invite the platform-by-platform litigation Henry describes. If Lilly's review of the supplemental production identifies another specific source, the § 4(b) process is available.[32]

[32] The court considered granting the request in limited form, considering as a starting point that Henry need not catalogue every application it has ever used. A possible approach was to require Henry to identify in writing the cloud-based platforms and repositories that its custodians use for business documents and communications and, for each, state whether Henry has collected from it and whether it has produced from it. Rule 26(g) requires a reasonable inquiry, and the § 4(b) mechanism for adding sources (which Henry invokes) works only if the requesting party knows what sources exist. Henry did not disclose its sources until September 2, two weeks before it declared substantial completion, and even then the disclosure was partial: Henry confirmed collection from four platforms without confirming production from them, and the notifications in Henry's production reference the five platforms at issue "among others." Salomon Decl. – ECF No. 111-1 at 3 (¶¶ 6–7); Disc. Letter Br. – ECF No. 111 at 2 (notifications reference "over a dozen cloud-based data sources"). The record shows three collection gaps were revealed only by Lilly's review of Henry's production: the Google Drive individual folders, Notion, and now the five platforms. A one-time written identification is a modest burden, and it is the kind of information the parties' ESI conference ordinarily identifies. *See* N.D. Cal. Guidelines for the Discovery of Electronically Stored Information and the accompanying Checklist for Rule 26(f) Meet and Confer Regarding ESI (identifying data sources as a conference topic). This approach might be the better cure for the serial-demand problem Henry describes: it lets the parties confer under § 4(b) once, on a complete picture, instead of platform by platform. Under this approach, nothing would require Henry to collect from any source it identifies. Any further request would be subject to the § 4(b) process and, if necessary, the court. That said, the court decided not to wade into the § 4(b) process, ruled as it did, and captures this approach for whatever utility it offers the parties during their future conferences.

United States District Court
Northern District of California

**CONCLUSION**

The court grants Lilly's first request. Henry must collect from Heap, Lucid, Figma, Asana, and Codeless; apply the parties' agreed search methodology, adapted as needed to each platform; and produce responsive, nonprivileged documents, substantially completing the production by November 20, 2026 (or, if that is not realistic, a different date that it works out with Lilly). Within seven days of this order, the parties must meet and confer under § 7 of the ESI Order about the mechanisms and parameters for production from each platform.

The court denies Lilly's second request.

Any request to modify the case schedule must be directed to the trial judge.

This order resolves ECF No. 111.

**IT IS SO ORDERED.**

Dated: October 14, 2026

LAUREL BEELER
sUnited States Magistrate Judge